21-5964, Yosaun Smith v. Commonspirit Health, Arguments Not to Exceed 15 Minutes per Side, Mr. Barron for the appellant. Good morning. Good morning. Good morning, Your Honors, and may it please the Court, Alec Barron on behalf of Plaintiff Appellant Yosaun Smith. With the Court's permission, I would like to reserve three minutes for rebuttal. Your Honors, the District Court's dismissal of Plaintiff's complaint without leave to should be reversed for several straightforward reasons. First, the District Court relied heavily on the Seventh Circuit's now-vacated decision in Devane v. Northwestern, which the Supreme Court sent back with instructions that complaints such as Plaintiff's must be assessed under the Twombly-Iqbal standard, as informed by Tibble v. Edison, an analysis that confirms the sufficiency of Plaintiff's complaint. I don't know why I would get too excited about that case. I mean, all the Court was making, the Court was just making the point, you can't just get out from under an ERISA claim by saying, hey, we got 40 options here, and if you pick 39 and it's a bad option, your fault. And they're saying, well, that's not really prudent. I mean, you shouldn't be giving them 40 options when two of them are stupid or really ridiculous. That's all they're saying. You're able to show number 39 is really ridiculous, outrageous, whatever. It doesn't kind of flip things and say you can show, for example, that it's always bad to have an actively managed fund. So I don't know if I'd get too carried away with what they did to the Seventh Circuit, which probably the essence of their work in this area is pretty good. Sure, Your Honor. Well, one comment that Judge Easterbrook made in the Seventh Circuit's argument, which I would highlight today, is, and I'm quoting here, I read Hughes is saying complaints like this cannot be dismissed on the pleadings. Be continued. Ever? Certainly not ever, Your Honor. We acknowledge that it is a fact-specific. But, I mean, you have to meet certain requirements. And how about having to identify a particular fund that is going to serve as your benchmark as opposed to relying upon just some sort of industry averages? Absolutely, Your Honor. And in our complaint, as it relates to the specific investment fund challenges, we do set forth apt benchmarks for each of the investments challenged. And defendants in the district court made much of the appropriateness of the benchmarks the plaintiffs selected. But in doing so, we believe they over-read the Eighth Circuit's decision in the minors in Davis cases as suggesting there are certain bright lines as it relates to investment performance comparisons. Do you think you state, is a state a claim under 12B6 to say it's a claim that ought to go to the fact finder whether you can offer an actively managed fund? Does that get you over 12B6? Well, Your Honor, that may or may not. I think it depends on the nature of the benchmark alleged and whether the plaintiffs plausibly support the use of the benchmark in each individual case. I've done the very thing you're now saying. Does it state a claim to say it's imprudent to offer an actively managed fund? Your Honor, I don't think it necessarily would be imprudent per se to offer an actively managed fund in plaintiff's position. What about where the normal things are true? Index funds are cheaper, index funds are obviously the average, and the actively managed is always 50 basis points more expensive, for example. So if the normal things are true, does that state a claim given all the literature out there that does suggest usually you're going to do better with index funds, which is the premise of your claim? Sure. I think in the absence of a plausibly alleged comparator, that may not state a claim. And plaintiff's complaint is not... But your comparator is index versus active. But I think there's a little bit of a misnomer in the record here. First, the Fidelity Freedom Index Funds are not, although there is index in the name, solely a passively managed investment option. Because they're a target date fund, the managers of the Fidelity Freedom Index Funds actually actively set the asset allocation of those funds, although they do select passively managed underlying funds. And we would submit that the gravamen of plaintiffs... So you're saying that that's really an active fund because they say something like 20% real estate, 40% stock, the rest bonds, you're calling that active management? We submit that there's a degree of active management in any event. Why not just pick another active management fund, as opposed to this thing that is 20% of the thing you're comparing it to? Sure. I think in this case, the reason that plaintiff stated her performance allegations against the Fidelity Freedom Index Funds is because of the striking canny similarities between the Fidelity Freedom Fund and Freedom Index Funds. Namely... Sure. I mean, but, you know, canny similarities, but only 20% similarity in sort of the core defining feature of the fund. Well, first of all, I think if you look at the glide path of these funds, with respect to your honor, they're virtually identical. There are slight marginal deviations from the glide path that the... Well, maybe perhaps more than marginal deviations that the managers are empowered to make. But even in the stated glide path, there are only marginal variations. So we would submit that they are much more similar than the district court understood. And to your honor's earlier question, I think it would be possible to state claims by comparing the performance of the Fidelity Freedom Funds to another actively managed target investment. The complaint is based on a theory of results, meaning that this fund did poorer as compared to this other fund. And the way I read the common law of trust, which I think that this fiduciary duty standard incorporates, is that that's simply not enough to establish liability, that you have to show conduct at the time of the decision. And at least the restatement third, and I think the restatement second says as well, that just because an investment does poorly is not enough to state a claim. Would you agree with that? We do agree with that proposition. Why? This strikes me as just like Twombly then. Twombly was a case that said conscious parallelism is not enough to state an antitrust claim. You have to actually show an agreement. And then all you alleged in the complaint in the Twombly case was conscious parallelism, and you didn't, the complainant didn't allege enough plus factors or whatever to get over that hump. Why is this case not just analogous to that? Because I see a lot of allegations of poor results, but I don't see a lot of allegations about why the decision, aside from the results, was bad. And so it strikes me, do you see the analogy I'm making here? We absolutely do, and we would submit that what was missing in Twombly is present here. As your Honor recognizes, Section 1 of the Sherman Act requires a plausible allegation of an agreement. In this case, we submit that Tibble v. Edison, which establishes a fiduciary's continuing duty to monitor investments in a plan, requires that fiduciaries take stock of changed circumstances, which is exactly what we allege did not occur here. So if you have a five-year bad performance, the taking stock would have happened after year one? Well, your Honor, it would depend on the circumstances. We do not submit that... You have a 50-year horizon, and every year you freak out because, oh my, we might be sued. Sell it now. I know it's low, but sell it. Sell it. Isn't that like the definition of the worst possible management you could have in investments? We perfectly understand your Honor's concern. We will point out, I think, in addition to the performance and the fee allegations, which is all virtually all of defendants and the district court's authorities had as allegations in the cases that were dismissed, this complaint outlines numerous significant red flags that the fiduciaries would have been made aware of in real time at each period in which they were making decisions to retain the Freedom Funds. So the red flags, back to Judge Murphy's question, the red flags are what? After year one, or is it after year five? Well, I think they must be appraised in real time, and the red flags here include qualitative red flags. Namely, there was a strategy overhaul that the Freedom Fund managers undertook in 2013 and 2014, which enabled them to take more risk with the investment alternatives. Enabled them to... Well, maybe some people want to take more risk. That may well be the case, Your Honor. We submit that the complaint pleads that the fiduciaries did not appropriately take into consideration the changed circumstances. Not only that the funds were underperforming in excess of... What changed circumstance? The fact that the fund decided to get more aggressive? Well, it didn't simply decide to get more aggressive. There were risks taken on that participants couldn't appropriately appraise. Glide path deviation, for instance, is a power that the investment managers had to deploy over time that participants investing in these funds wouldn't have been aware of. Do you have to make some type of allegation? So you're making the allegation that they made this change. What if the fund managers said, yeah, they made the change, but we think it's still prudent? Do you have to... Is your argument like a process argument that they didn't adequately consider this or they just ignored it? It's not necessarily in the complaint. It just mentions this fact. It doesn't necessarily say what the fund managers did or did not do in response. That's right, Your Honor. At this stage, without any discovery, it's not possible to know all of the precise contours of the fiduciary's investment management and monitoring process. That's recognized universally throughout the case law. Isn't that true in the antitrust context? That's why it brings me back to Twombly again. Of course, if they are engaged in an illegal agreement, they're not going to be announcing it saying, hey, we've conspired, so go ahead and sue us. It's going to be secretive. But the court still said conscious parallelism plus is not enough. I would think that would have been proven Twombly wrong, frankly, that type of allegation that it's difficult to know what the fund managers did and did not do. We agree that it is difficult to know at this stage what the court found and what the complaint didn't allege in Twombly were plausible allegations to support any inference that there was an agreement beyond... What do you do in this setting? How do you do it other than performance? Other than performance... When you say red flag, that's just another phrase for performance, best I can tell. We submit that there are actually qualitative red flags present here. Okay, add the word qualitative. Now, tell me what you mean. We mean that significant capital was fleeing from the Freedom Funds over this period of time. You know, active management can be designed to perform lower than the index funds, right? Because you might decide the market is out of whack, PE ratios are crazy, and the genius thing to do is perform 10% below index funds so when we hit the true bear market, it works out really well over the 50-year horizon. So I just can't understand what you're... You say we're not looking just at the performance, we're looking for red flags, we're looking for qualitative red flags. I have no idea what that means other than coming back to they performed less well relative to the index funds, which might be the point of an actively managed fund. It can't be a plausible allegation to actually be doing the right thing. I certainly agree with you there, and again, this isn't a salvo against active management per se. It is about the suitability of these funds for the particular plan. These funds were the qualified default investment option for this plan, as a result of which 75% of the plan's assets were invested in these funds. You agree you have to have a default option, or you don't agree with that? Is that a bad idea? No, absolutely permitted. Okay, so are you saying the default option has to be indexed? Certainly not saying that it has to be indexed, but it has to be. I mean, what's the relevance to the... I mean, we don't mean to give you a hard time, but what's the relevance of the fact that it's the default plan? Is there some higher duty or something? Well, if the duty continues to be reasonable under the circumstances, in the circumstance that it is the majority of the plan's assets, perhaps could impute a need to look at it more closely. Here, though, what we are alleging is that these investments were not suitable for the plan, its participants and beneficiaries, period. Okay, all right. We've got good support, so, yeah. Thank you, Judge Keplech. Okay. Well, I'm not presiding, though, so they might have more for you. Do you have anything else you want to say right now? I'm happy to reserve my time for rebuttal. Yeah, great. Good morning, Your Honors. Lars Golumbik on behalf of the Appellee Common Spirit Health. As you know, this lawsuit, the crux of it, involves challenges to the investment options selected by the plan fiduciaries of Common Spirit. Common Spirit itself sponsors the plan. Common Spirit is the product of a merger between Catholic Health Initiatives and Dignity Health. It's the largest non- Can a red flag be performance, and how do we decide when it suffices for 12B6 and when it doesn't? Yeah, and this gets to Judge Murphy's point, too. We're looking at, under ERISA and under the Common Law of Trusts, what was the conduct of the ERISA fiduciary, and it's under Section 404, under the circumstances then prevailing, right? What plaintiffs argue in these ERISA cases is that we don't have access. We don't have access to meetings of the plan fiduciary committee, so therefore, we instead can draw plausible inference from other data points, including performance, to move the possible over to the plausible. Don't you agree that sometimes performance would suffice? In other words, it's the plan that charges the most, or it's the fund that charges the most, so it's not meant to be defensive, and it keeps underperforming in dramatic ways. Isn't that enough to state a claim, or no? I think if you look at Hughes, the court helps us. They say there's a range of reasonable options that plan fiduciaries may make in making investment decisions, but what is not reasonable is looking at performance in a very narrow, cramped snapshot basis. Because what happens... What does that mean? Sure. Is narrow one year, or can it be five years enough? Why wouldn't five years be a pretty good snapshot? You know, ERISA fiduciaries aren't day traders. They're selecting investment options for purposes of the long-term investment retirement option for participants in their plan. So I would submit that one year, three years, five years is not a sufficient snapshot. And in this case, there was data available, even at the time of the complaint, that under 10 years, that the plan, the comparator, the Freedom Funds, or Fidelity Index Funds was not outperforming the Fidelity Funds. Well, on what basis could a plaintiff actually state a claim for breach of fiduciary duty with respect to including an option? I mean, if waiting for 10 years of bad results isn't good enough, in your view, what is good enough to bring the sort of suit that they've brought here? Right. Well, and again, going back to... I want to answer your question, but... Make sure you do. You're jumping ahead. All right, don't fall off somewhere. You're jumping ahead from the district courts. First... I'm just asking you that question. So what's good enough to state a claim? Well, I mean, typically in these cases, it's not about performance, because performance is a hindsight... So what is, just tell me in positive terms, what's enough to state a claim? What would that look like? I think you'd be looking at substantial underperformance over a long period of time, at least 10 years. So you agree that performance is, in some respect, a measure of stating a claim? Yeah. I mean, you have, again, if you're going to allow plaintiffs to make allegations that don't involve process, because that is what it's about under ERISA, they don't have access to that information. They don't have that. Right. So let's say, hypothetically, there is a plan whose fiduciaries really are just careless or have bad intent, or sort of have crony deals with friends of theirs to make that the default, and they know it's a terrible plan. I mean, how does somebody state a claim? You've got to wait 20 years for terrible results? I mean... Sorry. Yeah, right. You're finished. Yeah, I'm sorry. So I think what you're articulating there are two possible claims. There's the initial claim, which is what is the subject of this complaint. The initial selection of this investment was imprudent, and taking performance in hindsight and saying, because now I know what happened 5 years, 10 years down the road, I can turn the possible into the plausible. What I think you're getting at, though, is on an ongoing basis, a plan fiduciary has a duty to monitor the plan's performance. That seems to be what they're saying here, at least today. The crux of their complaint is not that there was a failure to monitor the performance of the plan, and therefore the fund should have been removed at a later point in time. The crux of their complaint is about the initial selection of that option. So there's two corresponding duties, the initial selection and then the duty to monitor. And obviously, we have an example with respect to... I don't really think they're bringing a claim that says just the fact of having an actively managed option by itself violates ERISA. I don't think they're saying that. I thought they were saying that having that and then watching it over 5 years should have been enough to clue them in. Maybe I'm wrong. Well, they're not saying that to you, and they didn't say that in their briefs, but I think that is the net result of what they're saying. They're saying that under this scenario, active management is deficient and that a sufficient comparator was a target date index fund. If we got the top 100 economists in the country together, I'd be surprised if a single one of them would say you should put your ERISA money in an actively managed fund. Why doesn't that suggest maybe they're right? Well, I respectfully disagree with you, Judge Sutton. I think what those economists would say is that a good long-term investment strategy is a target date fund, and that that target date fund can be... Yeah, but they just made the point, which is quite accurate. You can have a target date fund, which is basically a combination of index funds. You have an index stock, index bond, index real estate, and index international. Voila. That's what the economists would almost assuredly tell you to do. Well, and I think you also brought up a point, which I think was quite valid, is that, hey, index funds, they're great when times are good and the equity markets are high, but when it's a bearish economy, an actively managed fund starts to look better, right? Yeah, because that's why the economists tell you never market time. It's a loser's game. You'll always lose, and that's why the index funds are beautiful, because you're guaranteed eight basis points, and you just track the market, and off you go, and you can be really good at something else, your job, as opposed to being an amateur investor. I would imagine a lot of people who hold money in index funds probably would not be sharing your view right now. Maybe, maybe. You don't think I'm wrong about the... You disagree with me about the average economist. I think the typical economist would say index funds are the way to go. No, I would not agree with you. I don't... I'm a lawyer, not an investment professional, but having done this enough, I do not think... I think there's lots of different investment strategies out there that are suitable for a long-term investment strategy like a 401k pension plan for participants. And I've seen lots of scenarios where monies are put in equity markets, even in index funds, and you see diminished returns in an economy just like this one. Well, we don't need to have experts centrally plan everybody's investment options, right? Right. I mean, economists have had a rough go of it in a lot of predictions. That's a long time. Judge Murphy? I was just going to... The concern, I think, is a valid one about how do you gain access to the information of the process question, which does seem quite legitimate to me that they don't have access. I wonder if you could talk a little bit about... I mean, they are fiduciaries to all the investors. Is there any disclosure requirements involved in ERISA, or does the plan engage in disclosures about the way it engages in decision-making? Yeah. I didn't mean to overstate my earlier point. What a plaintiff or a participant may not have access to is the deliberations of a planned fiduciary committee in making a decision to select a particular investment. But ERISA has robust disclosure requirements for planned fiduciaries and record keepers with respect to investments that are offered, investments that have been selected, and the performance of those investments, as well as the expenses, which is less of an issue in this case. I think those could be an area of inquiry for determining, like, if something is said in those that suggests that maybe the plan administrators did something not so good, that that could be a basis to state a claim. And so that would get around the concern for the lack of access to information. Yes. And that is how a number of these cases are preceded beyond a motion to dismiss, is that based on that investment information, expenses, performance, the nature of the investment, that plaintiffs, and it's disclosed. It's often in a governmental filing, what we call a Form 5500, that a plan is required to file each year. A plan also is required to submit information to plan participants regarding the investments in a fund. It's that information that plaintiffs' counsel often use to populate a complaint. Do you have examples of what type of information might show an imprudent course of action? The Form 5500 can show expense ratios for a particular fund, performance information, fees charged by record keepers to a plan, the identification of who those record keepers and other service providers are to a plan, those kind of examples. They say that the fees for the plans that, the plans they say were imprudently included, they say those plans have fees that are, you know, a lot greater than some, I guess the average. Why doesn't, why isn't that good enough to allow them to sort of, you know, inquire further and get some discovery? Yeah, well, I mean, a good example is with respect to the record keeping fees. That's the service provider that helps to administer the plans, engaged by the plan's fiduciaries. And, you know, the appellant says that the record keeper fee should have been essentially 30 bucks a pop. And it cites to these industry statistics. I think there's, that information is deficient in two regards. One is that, again, it's not what's possible, it's what's plausible. And appellant did not identify a service provider in the market who they allege provides the same level of services for a lower cost. They just cite to just statistics. And we think those statistics are not on an apples to apples basis anyway. Because they don't take into account revenue sharing that takes place here, that mutual funds provide to record keepers to help defray the cost of administering the plan. Two other things that come to my mind as we're talking here. One is that the district court below utilized information, performance data that post dated the filing of the complaint. And it was his fourth basis for granting the motion to dismiss. But the court found that he could take judicial notice of that. And we think that is proper under Federal Rules of Evidence 201. And we've cited to a Sixth Circuit decision on that point where it's the same. Should we update that? In other words, let's say hypothetically a district court decision is two years ago. And we can read the same information as the district court judge. If we're going to go down this road, should we do the same thing but look at it in real time? Yes. We think you should. With our brief, we filed a motion to take judicial notice of more updated performance data as of end of year 2021. And that data shows that the Fidelity Freedom Funds outperformed the index funds. Should we reverse? I mean, I think you like us to do this because you think it will incline us to affirm. But could we look at that kind of information and decide, well, it seems so unfair to the poor district court judge. You know, he or she did not know what the next two years would bring. In a case where it's two years, I realize this isn't how it works today. But that could happen. Could we reverse on that basis? You were wrong not to know what was going to happen in the next two years? I think under a different set of factual circumstances, I think you could. Here, the more updated data simply affirms that the district court's own analysis below. The case could go on forever. Two years, it goes really bad. We reverse, it goes back. I mean, it just suggests that performance just shouldn't be part of this. There has to be a different basis for saying it's imprudent. I think what it gets to for the district court's point of view. Do you understand why I said it could go on forever? No, I don't think so. I mean, if we decide that's relevant, all of a sudden it crashes for two years. We decide, oh, boy, those flags do look a little red. And it goes back. The next two years are different. Oh, the flags don't look quite as red. It comes back. Oh, the flags are getting more and more red. To me, it's important, again, to differentiate between the initial investment selection and any duty to monitor. And I think on both scores, based on the data presented, both from the filing of the complaint, which only shows underperformance less than 1% on average, as well as the other updated data, I think it shows that the initial investment selection was prudent and there was no duty to replace it. All right. Thank you. So Mr. Barron. Your Honors, I think I should just begin by correcting a misconstruction of plaintiff's claim as one about the initial selection of the funds.  Paragraph 21 of the complaint indicates that these funds were in the plan since at least 2011. And perhaps we'd have a weaker claim if this was about the initial selection of the investment. But this claim is about the retention of that investment as red flags came to light, as information trickled out, and the fiduciary should have become aware of that information and investigated and removed these funds. So I think it's unfair to say that this is at all about the initial selection of the Freedom Funds and the complaint specifically disclaims that. I'd also like to just address the red flags with a little bit more particularity. The red flags not only are performance and excessive fees, they're the capital flight, the media reports, and other things. But, I mean, I don't know. That just seems kind of bootstrapping. I mean, the media, what do they know, frankly? Nothing that's relevant here. Oh, my gosh, somebody said something on CNN. Who cares, really, right? The fiduciary should care, Your Honor, with all due respect. I mean, capital flight, I mean, there isn't sort of a lemming obligation either, right? I just, I don't know. I mean, I have some sympathy for you because it's hard to sort of come up with a measure here. There's just one authority I'd like to raise then. Can I just, on the process point, not having access to it, why isn't that? I mean, first of all, ERISA makes them give your client, Smith, a lot of information, right? They're getting a lot of information pretty regularly. I mean, to the extent that's not enough to figure out whether prudent management is going on, that's Congress' problem. They should, you know, come up with another metric comparing this to that. And that has to be on the form of the quarterly statement or yearly statement, whatever ERISA requires. So why isn't that at the doorstep of ERISA as opposed to bolloxing up the 12B6 inquiry? Well, I heard in the earlier discussion that the disclosures require investment performance to be disclosed, expense ratios, certain investments in and out of the plan. But then I also hear in the same breath that these are the kinds of things that aren't enough to state a claim. And so to the performance discussion, it enters in when it becomes noteworthy, substantial, persistent. And one other thing here is that I heard in my opponent's argument that we should be looking at 10 years or more of performance data. We also plead wide and significant to look at the shorter period here because of the strategy overhaul in 2013, 2014. Ten-year performance data would reach back further than that and be less than meaningful. Isn't, I mean, I don't mean this to be like, I'm not trying to be harsh, but isn't there a real paternalism throughout this as well? I mean, we have like, you know, sentient thinking, you know, employees who are going to make decisions. And we're just giving them options. And some want to take more risk and some want to take less. And some, you know, some have more comfortable situations. And some have situations where this is it for them or will be in their retirement. And why wouldn't we just let them look at this up and down business and the indicia that you're talking about? And just, you know, you're grownups. Make your decisions. The several responses to that that I would offer are that participants in these plans only have access to the varied investments chosen for the plans menu by fiduciary. But they can study them and they can reflect upon which one's best for them, right? They can get the information that you have. Some will. And candidly, some won't. But this is what, you know, that's where this sort of, I don't know, so paternalism kind of creeping in. But we certainly wouldn't have the court understand our position to be that a certain kind of investment has to be in every plan. What is required is that the investments in the plan are suitable as deemed by the fiduciaries based on sufficient information to make that determination. And that's the crux of what we alleged didn't occur here, that not the initial selection but the retention of these funds through the red flags. And if I may just offer the authority about some of the qualitative red flags, the Griffin v. Flagstar Bank Corp case, which was a 2012 opinion of this court, and Judge Sutton, you happen to be on the panel. That's 492 Federal Appendix 598. And that case did find, the court in that case found that analyst reporting, commentary, media scrutiny, these are the kinds of information that fiduciaries should take into consideration. So we would submit that our red flag arguments, not just the performance, not just the excessive fees, the qualitative initiative and prudence that was coming out at the time of the fiduciary's retention of these funds, it is supportable under the circuit's authority. We appreciate your arguments. I don't mean to cut it off. Yeah, thanks so much. Appreciate the briefs and your arguments and for answering our questions, which we're always grateful for. Thank you, Your Honors. Appreciate the opportunity. The case will be submitted and the clerk may call the next case.